I think our lawyers are fairly familiar with the process. We've been here on a few occasions, so I don't think we have to explain anything to you. Our first case of the day is United States of America v. Kevin Brown. Ms. Maidwell? May it please the Court, Judy Maidwell on behalf of Kevin Dwayne Brown. Mr. Brown pleaded guilty to failure to register as a sex offender under SORNA, the Sex Offender Registration and Notification Act. The probation officer prepared the pre-sentence report and stated that the guideline range for imprisonment was 15 to 18 months. The guideline range for supervised release was five years to life. The district court sentenced Mr. Brown to 15 months imprisonment, which was a below guideline sentence, and 10 years of supervised release. On appeal, Mr. Brown challenges the 10-year term of supervised release because the correct guideline range was a single point of five years, not the five years to life. And the challenge is reviewed for plain error because there was no objection in the district court. There are four prongs to plain error review. Was your office involved at the sentencing stage? Yes, Your Honor. There are four prongs to the plain error review, and the government concedes that we meet the first two. But you didn't object? I'm sorry, Your Honor? Did you bring this error to the attention of the district court? Not in the district court, no, Your Honor. You're in front of a sophisticated office, and this error was not noticed by all these people, and yet now it's going to—not to correct it would work a fundamental injustice to the system? Yes, unfortunately. The Putnam case— Seems difficult to swallow. The fourth prong—if the fourth prong of plain error corrects any scenes of an unjust system and is reviewable because he served more time than he would otherwise, then we have no plain error. I understand, Your Honor. Okay. So how do we define that category of cases in which there was a mistake made without objection and an objection that could have—if brought to the attention of the court could have been immediately cured? How do we do that and grant the relief you want? Well, that's why we have plain error review, and it is a difficult standard to meet. Many times plain error isn't a matter—this Court recognized in Escalante-Reyes that many times it's not a matter of strategy, it's a matter of ignorance or inadvertence. I propose—this Court recently issued a case in an opinion called Putnam. A panel of this Court. I'm sorry. A panel of this Court issued an opinion in a case called Putnam. That case was also out of the Western District of Texas. That individual was sentenced about four months prior to Mr. Brown. Unfortunately, it appears that the Western District of Texas, the pre-sentence reports weren't getting changed to reflect this Court's opinion in Segura or the change in the supervised release commentary for the supervised release guideline. It had actually been changed, and unfortunately—so the pre-sentence reports were all coming out wrong, and apparently none of the participants in the courtroom were catching it, and my attorney afterwards told me that he provided ineffective assistance. I know that's not in the record, but many times plain errors are because the lawyers miss it. They get it wrong. Was this error of the same genre that it was virtually systemic in the Western District, or is this an episodic occurrence? I don't know that I have enough evidence— I understand what you're saying about that type of error, but that strikes me as a different breed of cat than what we're dealing with. That's just somebody's oversight. I think it's a combination of the two. I think that in this particular instance, the attorney missed it. I believe that everybody was still operating under the belief that a sort of violation was five to life. You mean the attorney? Your defense counsel? What about the prosecutor? There's no indication that the prosecutor was aware of it as well. The district court, in his statement of reasons, the district court, when he set out the guideline calculations, under guideline calculation for supervised release, he said five to life. So everybody was operating under the wrong—and this court has actually said in some of its plain error cases that one of the things that it looks at in deciding whether to exercise its discretion is the clarity of the error. What's stated precisely? What is the consequence of this error to this defendant? He gets five additional years of supervised release, double the amount of time. And it's true, supervisor— Double the amount of time for supervised release, not double the amount of time served. That is correct, Your Honor. And it's true that incarceration is much more restrictive than supervised release. But supervised release, the Supreme Court in this court has recognized, is a significant restriction on freedom. They have to report to the probation officer for every month. They have mandatory conditions. They have standard conditions. They have special conditions. They have restrictions on where they can live, who they can associate with, if they travel. What are some of the special conditions, I guess, extra burdens that have been put on your client, Mr. Brown, that we might consider? I mean, how severe is a supervised release? Is he on, you know, curfew at 5 o'clock to be at home? And does he have an ankle bracelet? Or maybe that's kind of extreme. But give me an idea or give us an idea of how his life is different under supervised release. Well, he won't—the main special condition that he has under supervised release is that he attend mental health treatment. And this court has actually recently, in a February 2016 unpublished opinion, recognized that a condition of mental health treatment raises concerns about autonomy and privacy and that it represents real financial costs to the defendant and to the government. Now, I didn't challenge that condition because it's reasonably related. We're talking about five additional years of that condition. The other thing with supervised release is it's five additional years during which the threat of reincarceration, not for committing a new crime, but for violating a condition, is present. And—I'm sorry, Your Honor. Is he registered as a sex offender? I'm sorry, Your Honor, I couldn't— Is he registered as a sex offender? Yes, he is. He has to register as a sex offender for the rest of his life. Yes. So he's going to have to identify himself as a sex offender. That, to me, carries a lot more bite in terms of his conditions of his release than these reporting requirements we're talking about. Some people argue that that's far too much in many cases, et cetera. But the point is that Congress made that judgment that this guy is already subject to registration, et cetera, et cetera. So in the light of that light, being out and out on supervised release, it doesn't appear to be quite such a great enormous restraint on his freedom. I mean, he's already seriously deprived of his freedom for the rest of his life. And I would actually disagree a little bit. Because the district court questioned all the parties about what was involved with the sex offender registration. And, in fact, because he was surprised that Mr. Brown was living with his wife and two children. And so he asked Mr. Brown, aren't there restrictions on you being around children? And Mr. Brown said, I think there has to be another adult there, but we've been living together for nine years. So I don't really think that—I haven't been violating. He has to—I don't know what the exact requirements are, but the court said, so this is strictly a failure-to-register issue. And the prosecutor noted, yes, Your Honor, he's not under any—as far as we know, he's not under any type of supervision. So he has to register. He has to make the jurisdiction aware of his presence, his location. If he moves, if he changes jobs, if he goes to school somewhere, he has to notify them. That is not the same as having to go to the probation officer. More than that, when he moves into a neighborhood, his neighbors know that. Yes. Right. So he walks in branded. Yes. This is not—I'm trying to—my point about that is not to defend that process, but rather to point out, to gain perspective about the consequences this error has visited upon him. And I understand what the court is saying. I guess I'm disagreeing that supervised release doesn't actually bring with it a far greater— or this condition, whatever it may take to be termed. This is relatively low in the spectrum, at least in my judgment. I think he would amend it out for—if you've got a choice, do you want to be registered as a sex offender or do you want to supervise release for five years? If you've got that choice, you and I know what he would do. No one wants to be registered as a sex offender. That's correct. But he didn't have that choice. I mean, he's going to have to register as a sex offender. But, in fact, at the sentencing hearing, didn't the lawyer say—express that he was primarily concerned with what the sentence was going to be, and then as regards the supervised release, it was as much time as you want? Yes, Your Honor. The focus of the sentencing hearing was, in fact, on the term of imprisonment. That's the focus of most sentencing hearings is on the term of imprisonment. And the defense attorney was desperately trying to get time served for his client, was throwing out a number of possibilities. Give him a downward departure. Give him a downward variance. Give him time served, as much supervision as you want. Put him on probation for five years and make this a condition of his probation, the time served. Let me deal with exactly what his lawyer told the court. Not only did he not object, he said, I'm suggesting to the court a couple of things. One, a downward departure, a downward variance to time served, and then supervision for as much as you want. Alternatively, time served as a condition of probation. I read the release. It was a well-done defense plea to the court. Now, my question to you is, this looks like not only did a failure to object, it was an affirmative statement to the court that perpetuated the mistake that was made. In other words, we not only have something not bringing to the attention of the court, the defense lawyer is urging him to do what he now says is plain error and an injustice. Am I missing something in that? No, Your Honor. You're not missing something in that. My response would be that the defense counsel made this argument based on a misunderstanding of the law. He believed it was five to life. Had he known it was five years, he would not have been asking the court to do an upward variance on supervised release for his client. So it was an error of law, and there's nothing in the record that indicates that the court was influenced by this argument. The court didn't give the defendant time served. The court didn't say, I'm going to give him a downward variance on imprisonment, and I'm going to give him 10 years supervised release because defense counsel suggested that. So it's based on an incorrect understanding of the law that everybody was operating under, and the record doesn't show that it impacted the district court's decision. Well, we have the Segura decision, and then we have the Putman decision. Are they inconsistent? Can they be distinguished? Which one applies better in this case, or could you kind of clear it up for the court as to where we stand on the law? I don't think that they're inconsistent. What you have is a spectrum. Segura was the first case where this court addressed the issue of the guideline term for supervised release for SORNA offenders. And so in Segura, the court found that it was error for the guideline range to be five to life and said it's a single point, it's five years. But in Segura, they said it's not plain because there's no prior Fifth Circuit law. And then they said even if it's plain, in this case it didn't affect substantial rights because the district court said, I believe that a lifetime of supervised release is necessary for Mr. Segura because he's had a long criminal history, he's had multiple sex offenses involving contact, he's had multiple failure to register convictions, this is his third one. I find he is a clear and present danger to children. And in this case, don't we have multiple offenses since the first conviction? Don't we have that here? Yes, we do. We don't have a whole string of failure to register, but we do have offenses which occurred during those periods of time where he was on probation for a prior offense. A lot of them. Yes, Your Honor, we do. And that was before the district court. And what the district court focused on in Segura, the district court focused on that criminal history and his concern about that individual as a sexual predator. In Mr. Brown's case, that is not the tenor of this sentencing. The district court focused not on that criminal history, which is remote. The sex offense is 25 years old. His most recent offense is 13 years old. The court focused on the fact that he had been in compliance. The court said you've been in compliance all along. Three times the court noted that Mr. Brown had been in compliance with registration, twice in sentencing and in the statement of reasons as one of the bases for the below guideline imprisonment term. Ms. Maidwell, did the PSR say that he had not been or he had not registered? It seems that the judge said one thing and the PSR said something else. It was under the PSR in the section called other criminal conduct. There is a 1999 failure to register. It doesn't indicate it was an arrest. Perhaps a charge was filed out of California, which is where his original sex offense was out of. But he had moved to Indiana, so the present report indicates that in 2007 that charge was dismissed in the interest of justice. I can only surmise because he was registered in Indiana and reporting. But that's speculation on my part. But it's not, it wasn't a charge. And the district court had all of this information before it. The district court was actually sympathetic to Mr. Brown. And that's why he got the below guideline sentence. When the court talked about why he wasn't going to give him time served, it was his concern not that Mr. Brown was a danger to the public. It was his concern that Mr. Brown didn't have a place to live and so he would end up being homeless, staying at the homeless shelter. So he wanted to give Mr. Brown's family time to get the arrangements together for Mr. Brown to have some place to live when he was released from imprisonment. The district court in this case wanted, this was a very thoughtful sentencing. The district court in this case wanted to get it right. The district court said to Mr. Brown, I've read your letter. It was a long one. Because there are mental health issues here. I've read your letter. I get your gist. I'm somewhat persuaded by it. And you've been complying all along. Did you mess up this time by not registering? Yes, you did. And the reason I'm not going to let you out right now is because you don't know about your living arrangements. So the tenor of this sentencing was very different from the tenor of the sentencing in Segura. And I believe that this court should exercise its discretion to allow the district court judge, in the first instance, with the correct guideline in front of him, to make the decision on whether he's going to give the five-year term of supervised release or an upward variance to ten years of supervised release. Okay. Thank you. He was living in San Antonio in a motel with two children, nine, ten years old. Were those his children? No, they were not. They were his wife's children. And she wasn't there. No, she was there. And so this registered sex offender, which involved offenses involving a child, was living in those conditions. And that, of course, was brought to the attention of the judge, and he was well aware of that. Yes. All right. He was well aware of that. I would note that his original sex offense, which the description in the pre-sentence report is quite heinous, it was 25 years ago, he has no other sex offenses. And also, and I'm not trying to diminish the severity of it at all, but it is interesting that he got 365 days of jail and three years probation on it. But I just throw that out there because it's interesting from the pre-sentence report. You're a very fine advocate. I'm just picking you up on a couple of things. Thank you. Okay. Good morning. May it please the Court. Well, I'd like to begin, I guess, by discussing the fourth prong, because I think this comes down to the exercise of discretion, whether to correct the error. And it occurs to me that defense counsel basically makes an offer to the court. I'd like a downward variance and give him as much time as you want. And maybe he misunderstood what the range was. Maybe he didn't. Maybe it was ineffective assistance. Maybe that's something that comes up in a 2255. But he got his downward variance, and now they're complaining, well, wait a minute, he got ten years instead of five. Admittedly, the range is a single point, five years. But when it gets down to whether this shots the conscience, and we look at the factors outlined in Segura, and we look at the factors outlined in Putnam, I say this case doesn't. One of the key distinctions between Putnam and this case is that prior sex offense is a contact case. This isn't one of the other types of cases that ‑‑ and I think that it clearly puts it in a different context. And so to the extent that he has ‑‑ And you mentioned Putnam. Is that the only difference between this case and Putnam? It's very close. It's very close. It's one of the factors the court identified in distinguishing Segura as part of their reasons. So in Putnam, the panel decided to correct the error. They did, and it was a noncontact case. And so if this is that much like Putnam, why shouldn't we do the same thing in this case? Well, it's actually a lot like Segura as well. And so ultimately I think that is the question this court has to decide. And so, of course, during Ms. Maidwell's presentation, many of the factors that I was going to discuss as reasons why I think you shouldn't correct the error are that, number one, if you read the transcript, the sentencing court doesn't mention the pre-sentence report at any time during the imposition of the sentence. Adopts it at the beginning, and that's it. Doesn't mention it again. Goes through and says, quote, the guidelines recommend but do not require. Let me see. I may have changed my page. But in any event, he basically says, I've looked at the 3553 factors, and I'm going to go ahead and give you 15 instead of 18, a downward variance, and in the same sentence basically imposes 10 years. So there's no linkage, direct linkage at the time it's imposed. That's one of the factors identified in Segura. Secondly, I think this court is focused on the idea of how significant the error was. And in light of the range of five to live statutorily, five being the guideline sentence recommended, it strikes me that this, compared to Segura, which was a life sentence, is not significant in comparison to that. Putnam was 15 years. This is 10. All of these factors are slightly, we had life in Segura, 15 in Putnam, 10 here. It seems, my reading of the record, is the district court picked 10 years. Five years was the base, life was the maximum, and he picked 10 years. Now, whether that was linked to the pre-sentence report or not, it seems to me that under this rubric of plain error, and as Judge Higginbotham points out, that we are very close to saying that all errors are going to be corrected, regardless of whether they're plain, unless we draw the line somewhere, which is what the fourth prong is about, and to some extent the substantial rights prong as well. And here, given— Let me ask you, because as I understand it, one of the defendants' arguments is that the trial court evidenced that it was looking to be lenient with this downward departure, by virtue of the fact that it decided to do a downward departure. Would it be appropriate for a trial court to decide to do a downward departure in consideration of the fact that it was going to do a longer period of supervised probation? In other words, I'm inclined to go down on the sentence, but I'm going to replace that with a longer period of supervised probation. Is that appropriate to consider? Absolutely. It's part of the amalgam of sentencing factors a district court can consider. I think the district court can fashion a sentence of— Is that sort of what the lawyer asked for? The lawyer basically made that suggestion, said, I want my downward variance, and give him as much time in supervision as you want. And so recognizing that imprisonment, of course, is a much greater deprivation of liberty, and that supervision ultimately has great societal interest as well. It is a burden on the defendant, no doubt. But as Judge Higginbotham pointed out, he is a registered sex offender. He is going to have to comply. And the fact is that given the serious nature of his prior sexual conviction, a contact conviction, that supervision serves important purposes. And it may very well be that in this case, for these sorts of reasons, that this court would exercise its discretion and say, you know, this doesn't shock the conscience of an ordinary citizen and doesn't undermine confidence in the system, and we're not going to correct this error. And the defendant still has the opportunity if he wants to file a 2255 and make his case. The other thing about supervision is that it's always subject to being amended, to being altered, and if his circumstances change, and if he completes his five years, he can go back into District Court under 3583E, I believe, and ask for a modification. This is certainly not set in stone the same way that under Rule 35 a sentence would be. And so the defendant still has options even if he shows over a long period of time that he in fact is compliant. And so looking at all of the factors, I do not believe that this case is one in which the 10-year term should be noticed and it doesn't shock the conscience of an ordinary citizen or undermine the integrity of the judicial system. If there are no further questions, I'll yield back my time. I promise to be brief. But you took about three minutes extra first time around, so how can I believe you this time? I don't know. The one argument that opposing counsel makes, that supervision is always subject to being modified, that is, of course, true. The same argument was made before the Putnam panel, and they rejected that as a basis for not exercising their discretion. Counsel a number of times said it doesn't shock the conscience, it doesn't shock the conscience. The standard is that it seriously affects the fairness, integrity, and public reputation of the judicial proceedings. Obviously, that's a squishy standard. That's the difficult thing that the court has to decide. Squishy, is that your word? Yeah, it was squishy. I'm sorry, Your Honor. I like that. But I would say that where all the participants in the courtroom are operating under a misunderstanding of what the range of punishment is and that arguments are being made based on that misunderstanding. But that undermines the integrity. When was this error discovered? I mean, was it when you started reviewing the record? Did the probation officer say, oops, we've been messing up? Or who or when was this discovered? Well, it's completely outside the record, but if you . . . I guess I've already spoken a couple of times outside the record. We have our trial attorneys fill out appellate worksheets when a client appeals, and in that worksheet, the trial attorney said, I messed up. I didn't object to the term of supervisor release. I committed ineffective assistance. You know, I read the defense counsel's argument here, and to be a very shrewd one, I don't mean that in a majority way, a very smart, calculated pitch to the court. But what he was accenting here is that we need him in, out, not in, Judge. We want him out, not in. His wife needs him, his children need him, out, not in. Look, you just gave him out. You put him where he's outside. Don't be concerned about that. Any kind of period of probation you want. It was a very effective argument, but it was almost like, okay, if you're going to take away that period of supervision, maybe revisit the question of in or out. I mean, you can't have it both ways. That's my concern about it, and the large concern over the softening of the contemporaneous objection rule, which cuts throughout the system and not just the criminal side. You know that. You all seem to be very familiar with that. You are my main supporters in these things. But that's my concern about it, on the system of contemporaneous objection rule. I'm almost as strong as Alvin Rubin, Judge Rubin was on that point. I caution you, I'm just being strong. They're upset because I was a trial lawyer and because I was a district judge, and these other people were too. You're sensitive to finding out that you erred when nobody mentioned it. And I appreciate everything that the court has said about that. I represent Mr. Brown now, and I know that the five years of extra supervised release is a great concern to him. It's difficult. Mr. Brown is indigent. He applied for Social Security Disability. So actually going to the probation officer every month, I mean, for my clients, many times this is difficult. It involves catching the bus because they don't own cars. So what may seem like not much of a burden to those of us who don't experience poverty is actually a significant burden to indigent defense. Many of our clients will say, I just don't want to be on paper, which is the term for being under supervision, and it's because of that. So I understand the court's concerns. I don't believe in this situation that it was a bait and switch on the part of the trial attorney, but I can understand the court's concern about that. I ask on behalf of Mr. Brown, and actually on behalf of the district court, who was doing a very thoughtful sentencing, that he be allowed to reconsider knowing that the correct range is a point of five years. And unless there are any other questions. Thank you. Thank you both.